UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Andrew Breech,

    Plaintiff,

    v.                                                     Case No. 1:03cv360

Scioto County Regional Water            Judge Michael R. Barrett
District #1

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Defendant's Motion for Summary Judgment (Doc. 16). Plaintiff has filed a Response in Opposition (Doc. 23) and Defendants have filed a Reply (Doc. 27). Both parties have submitted supplemental authority and responses (Docs. 28, 29, 30, 41, 42 and 43) which will be considered in this opinion and order. This matter is now ripe for review.

**I.**     **FACTUAL AND PROCEDURAL BACKGROUND**

In his Amended Complaint, Plaintiff Andrew M. Breech ("Breech") brought claims of retaliation and age discrimination under Title VII of the Civil Rights Act of 1964 and Ohio Revised Code §§4112.02 and 4112.99 against Defendant, Scioto County Regional Water District #1 ("Water #1"), his former employer (Doc. 4).[1] Plaintiff also alleges retaliation in

---

[1] Because "Ohio courts examine Title VII . . . and state employment-discrimination claims under federal case law interpreting Title VII," Bucher v. Sibcy Cline, Inc., 738 N.E.2d 435, 442 (Ohio Ct. App. 2000), Beech's state law retaliation cause of action stands or falls with the federal one. Therefore, the Court need analyze only Plaintiff's Title VII claim.

violation of 42 U.S.C. §1983. Plaintiff, in his Response to Defendant's Motion for Summary Judgement, withdraws his claims of age discrimination. Thus, Defendant's Motion for Summary Judgment as to Counts V and VI will be granted.

Breech was hired by Water #1 on March 17, 1997 as a plant operator and later worked as a maintenance man. He was terminated on June 16, 2003. (Breech Decl. ¶1-6,95). Water #1 is the water treatment plant for Scioto County and is governed by a Board of Directors. Jonathan King is the General Manager and Rich Bradford is the Supervisor of the Operations Department. (Goldman Decl. Exhibit 7).

It is undisputed that Breech had no disciplinary incidents or notations in his personnel file from the date of his hire through August, 2001. In May, 2001 Breech reported what he perceived was a safety concern wherein he witnessed another employee painting in a confined area without a respirator. However, in his deposition Breech could not recall the details of any complaints he made or when they occurred. (Breech Depo. 103, 107 and 110).

On June 8, 2001 Breech was informed that he was to work four ten-hour work days instead of the five eight-hour work days that he had been working. (Breech Depo. Exhibit C). On June 12, 2001 Breech filed a grievance regarding this change. The Board of Directors denied this grievance. (Breech Depo. Exhibit C).

In July of 2001 Breech reported to the Board of Directors what he perceived to be as sexual harassment against two female employees. (Breech Decl. ¶14). On August 14, 2001 the two female employees filed an OCRC complaint against Water #1 and named Breech as a witness. (Goldman Decl. Exhibit 1). Breech was unable to work from mid-August, 2001 to September 9, 2001 due to an illness. On September 21, 2001 Breech was

2

told he would be moved to a newly created position on the second shift, effective October 1st. He was told this new position was created for security reasons in the wake of the September 11th terrorist attacks. (Breech Depo. Exhibit H). Breech was again unable to work from October 27, 2001 - January 7, 2002 due to a previously scheduled surgery.

On February 5, 2002 Breech was informed that he would be interviewed by OCRC as part of the sexual harassment investigation on February 15th. On February 13th Breech and another employee, Kevin Marshall, were reprimanded for "lack of effort and poor workmanship." (Breech Depo. 115 and Exhibit J). He and Marshall were told to remove a bolt. In an attempt to remove the bolt, the bolt was rounded off and they were unable to complete the task. (Goldman Decl. Exhibit 8). On March 20, 2002 Breech filed a retaliation complaint with the OCRC and EEOC. (Breech Decl. Exhibit B).

On July 1, 2002 Breech was given two formal reprimands. The first was for insubordination for failure to follow instructions with respect to the operation of machinery which resulted in burns to Breech's arms on June 10th. The second reprimand was for leaving work without informing his supervisor. Breech became ill at work on June 18, 2002 and did not inform his supervisor that he left the plant until after he arrived home 30 minutes later. (Breech Decl. ¶41-42; Goldman Decl. Exhibit H). On July 9th Breech was given a three day suspension for violating company policy on June 18th when he left work early without first informing his supervisor. Breech was given an opportunity to speak on his own behalf at the disciplinary committee meeting but failed to do so. (Breech Depo. 147).

On July 16, 2002 Breech filed a grievance with Water #1 claiming retaliation for being a witness in the sexual harassment matter. (Breech Depo. Exhibit L). This grievance was denied by King on July 18, 2002 because the grievance did not provide specific information upon which to substantiate a claim of retaliation and because King concluded that the write-ups or other discipline administered to Breech were appropriate and that Breech had failed to appropriately respond to the disciplinary actions at the time he received them. (Breech Depo. Exhibit R).

On September 11, 2002 Breech was reassigned to an operator position rather than a maintenance position, a reassignment that Breech saw as less desirable. Breech was also informed that Water #1 had a new policy which required all plant operators to pass a licensing test by June 15, 2004. (Breech Depo. Exhibit U). Water #1 paid for Breech to take a correspondence course for the licensing test. Breech failed to complete the course and failed the test three times, never obtaining the required license. (Breech Depo. p 91, 93-94). On October 12, 2002 Breech was moved to the third shift due to his lack of license seniority. (Bradford July 14, 2004 Depo. 308, King May 17, 2004 Depo. 236).

On December 6, 2002 Water #1 denied Breech's request to take vacation on December 24th because two other employees had previously requested that date off and Water #1's policy for vacation is a "first come first served" policy. Breech threatened to take the day off anyway. (Breech Depo. 176). Breech received a letter from King directing him to work on December 24th. (Breech Depo. Exhibit X). On December 11, 2002 King and Bradford asked Breech to attend a meeting to discuss what they believed to be Breech's violation of company policy of not washing a filter on his shift and for what physical threats made by Beech. Breech admitted that he said "I was tired of it and I was

4

going to do something." (Breech Depo. 177). On December 12, 2002 King wrote a letter to Breech informing him that threats of any kind to managers would not be tolerated. (Breech Depo. Exhibit Y).

On March 12, 2003 Breech received written reprimand for not washing a filter during his shift. (Breech Decl. ¶64, Breech Depo. Exhibit BB). In his deposition, Breech admitted that he had made a mistake. (Breech Depo, 194). On April 7, 2003 Breech filed an EEOC complaint alleging age discrimination. (Breech Decl. Exhibit H). On April 25, 2003, Breech's attorney notified Water #1 that it would file suit if the matter could not be resolved. (Goldman Decl. Exhibit 3).

On May 2, 2003 Breech was instructed to remove magnetic stirrers from a sink drain, a task Breech had never performed before. Breech removed 12 stirrers. Breech was unsure of what to do with the stirrers so he placed them in a bag and kept them in various areas around the plant. (Breech Decl. ¶73-75 and Goldman Decl. Exhibit 14). Apparently Bradford had planned to use the stirrers for chemical testing on May 14th.

On May 15, 2003 the Board of Directors held their monthly meeting. During his meeting the Board adjourned into executive session to discuss Breech. (Goldman Decl. Exhibit M). It is unclear from the record what was discuss in this executive session. On May 16th another meeting was held between Breech, King and Bradford. King and Bradford discussed Breech's alleged improper maintenance of a gear box on April 9, 2003 and his harassing of coworker Kevin Marshall. Breech was also asked about the stirrers and whether or not he completed that task. Breech informed King and Bradford that he did complete that assigned task and he produced the 12 stirrers to them. King repeated asked Breech where the stirrers were being kept. Breech would only respond that they

5

were kept "at the plant". Because Breech would not provide the exact location of the stirrers after Breech removed them he was accused of insubordination and dismissed. (Goldman Decl. Exhibit N, Breech Decl. ¶73-86). The next day Breech was informed that he was suspended until further notice. On May 19, 2003 Breech was formally notified that he was suspended without pay pending a disciplinary hearing on May 22. (Breech Decl. ¶90-91, King July 22, 2004 Depo. Exhibit 31).[2]

At Breech's request the hearing before the Disciplinary Committee was rescheduled to May 28, 2003. At the hearing Breech's personnel file was provided to the committee and the physical threats made by Breech were also discussed. (King May 17, 2004 Depo. 121-123). Breech also read a prepared statement accusing Water #1 of retaliation for his participation in the sexual harassment matter and asserting that he was nervous in the May 16th meeting as he had not taken his medication that day. (Breech Decl. ¶94-99, King May 17, 2004 Depo. 117). The Committee allowed Breech until June 9th to provide medical evidence to support his claim. (Breech Depo. Exhibit JJ). On June 6th Breech provided a hand written response to the medical evidence request stating that without his medication he became shaky and that the "prescription is strictly or mainly for the purpose of helping me to rest and to improve my appetite..." (King July 22, 2004 Depo. Exhibit 29). The letter did not explain how his lack of medication effected his demeanor at the May 16th meeting. On June 10, 2003 the Disciplinary Committee voted to terminate Breech. On June 16, 2003 the Committee formally notified Breech of his termination. (Breech Decl. ¶100).

---

[2]This matter was filed on May 20, 2003.

## II.     ARGUMENTS OF THE PARTIES

Defendant argues that it is entitled to summary judgment on Plaintiff's claim of retaliation because (1) Breech failed to exhaust his administrative remedies and (2) Breech can not prove a *prima facie* claim of retaliation.  The Defendant also argues that it is entitled to summary judgment as to Plaintiff's claim of a violation of §1983 as the sole remedy for such retaliation is set forth in Title VII.

Plaintiff argues that there are "hotly contested issues of fact for trial".  (Doc. 23, p ii).  Specifically, Plaintiff responds that the retaliation was a continuing violation thereby not requiring him to file subsequent EEOC complaints, that there is a material issue of fact as to his claim of retaliation and that any legitimate reason for the adverse action is a pretext. Plaintiff also asserts that he may maintain his Section 1983 claim.

## III.    LAW AND ANALYSIS

### A.     Summary Judgment Standard.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a

scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

    B.    <u>Failure to Exhaust Administrative Remedies</u>.

Water #1 argues that Breech failed to exhaust his administrative remedies under 42 U.S.C. §2000e-5(e)(1) and 29 U.S.C. §626(d) for failure to file subsequent complaints to the EEOC. Generally, employees must exhaust their administrative remedies by filing EEOC charges and obtaining right-to-sue letters before filing suit in federal court under Title VII. *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991). *See* also *AMTRAK v. Morgan*, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). Water #1 argues that the only EEOC Complaint relating to retaliation was filed on March 20, 2002 and pertained to Breech being transferred to the second shift on October 1, 2001.[3] The March 20th Complaint was filed prior to most of the alleged acts the Breech now asserts is retaliation. Breech failed to file any subsequent EEOC complaints as to the subsequent conduct.[4] Water #1 relies on *AMTRAK v. Morgan*, 536 U.S. 101 (2002) to support its position. The Supreme Court in *Morgan* stated:

> A discrete retaliatory or discriminatory act "occurred" on the day that it "happened." A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it. *Id.* at 110.

---

[3] Breech also makes no reference to the shift change that occurred on June 8, 2001 nor the reprimand that he received on February 13, 2002 in the March 20th EEOC Complaint.

[4] Breech did file an EEOC complaint on April 25, 2003; however, that complaint only complains of age discrimination and states that the date of discrimination is March 12, 2003, the day on which Breech received a reprimand for not washing a filter on his shift. There is no mention in any EEOC complaint as to the July 1, 2002 reprimands, the three day suspension, the indefinite suspension or his termination.

\*\*\*

Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." *Id*. at 114.

Breech responds that the subsequent acts were reasonably related to the retaliation set forth in the March 20th Complaint and, as such, no additional complaints to the EEOC were necessary. Additionally, Breech argues that the subsequent acts of retaliation were part of a continuing violation and not discrete acts of retaliation. Breech argues that *Morgan* is inapplicable to this matter as the Court in *Morgan* only dealt with acts that occurred prior to the EEOC filing and not subsequently. Breech also relies on *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367 (6th Cir. 2002) for the proposition that the adverse acts were part of a recurring violation.[5]

The Sixth Circuit has applied *Morgan* to subsequent acts in several cases. *See, e.g., Bacon v. Honda of Am. Mfg., Inc.*, 2006 U.S. App. LEXIS 18004 (6th Cir. 2006, unpublished)(discrete discriminatory acts that occurred outside the 300 day period can be used as background evidence in support of a timely claim, but are not actionable in themselves); *Sherman v. Chrysler Corp.*, 47 Fed. Appx. 716, 721 (6th Cir. 2002, unpublished) (Retaliation claims based on acts subsequent to the filing of the EEOC charge were never the subject of an EEOC charge, and therefore were not exhausted). Other courts have generally agreed. *See, e.g., Romero-Ostolaza v. Ridge*, 370 F.Supp.2d 139, 149 (D.D.C. 2005)("*Morgan* has, on the whole, been understood to also bar discrete

---

[5]The Court notes that *Weigel* was decided one month after *Morgan* and that the 6th Circuit did not address *Morgan* in the *Weigel* decision.

acts occurring after the time period, after the filing of an administrative complaint, when a plaintiff does not file a new complaint or amend the old complaint but instead presents these acts for the first time in federal court." citing *Martinez v. Potter*, 347 F.3d 1208, 1210-11 (10th Cir. 2003); *Velikonja v. Mueller*, 315 F. Supp. 2d 66, 74 (D.D.C. 2004)). But *see Delisle v. Brimfield Twp. Police Dep't*, 94 Fed. Appx. 247, 253-54 (6th Cir. 2004, unpublished)( The *Morgan* holding was limited to its facts and that it only barred untimely claims that occurred prior to the filing of an EEOC charge, rather than those that occurred subsequent to the filing of a charge).

Regarding Breech's argument of a continuing violation and the actions being reasonable related, the Sixth Circuit, in *Kinamore v. EPB Elec. Util.*, 92 Fed. Appx. 197, has addressed this issue and stated:

> In the aftermath of *Morgan*, we have concluded that the two-part inquiry for showing a continuing violation applies only to hostile work environment claims. *See Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003) ("Accordingly, *Morgan* overturns prior Sixth Circuit law addressing serial violations, i.e., plaintiffs are now precluded from establishing a continuing violation exception by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period."). *With respect to run-of-the-mill retaliation claims, however, only the "second category of continuing violations, involving a longstanding and demonstrable policy of discrimination," may be used to avoid the customary rule that the limitations period begins to run with each discriminatory act. Id.* (Emphasis added).

*Kinamore v. EPB Elec. Util.*, 92 Fed. Appx. 197, 206 (6th Cir. 2004). Since Breech has failed to prove, or even allege, that Water #1 had a "longstanding and demonstrable policy of discrimination" or retaliation, this argument must fail.

This Court agrees with Water #1 and finds that Breech has failed to exhaust his administrative remedies as to all alleged acts of retaliation that occurred after March 20, 2002. Breech's suspension and termination each constitute a separate actionable "unlawful employment practice." *Morgan*, 536 U.S. at 114. Thus, the only alleged retaliatory actions that survive are those that occurred between May 24, 2001 and March 20, 2002, i.e., the shift change effective October 1, 2001 and the reprimand of February 13, 2002.[6]

Breech also advances the argument that because Breech filed the EEOC Complaint *pro se* that the Court should construe the complaint broadly. *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 282, 838 (6th Cir. 1999). However, the Court notes that the March 20th EEOC Complaint, although *pro se*, was adequately prepared and the April 25, 2003 EEOC Complaint alleging age discrimination was prepared with the assistance of counsel. Thus, this argument has no merit.[7]

    C.    <u>Retaliation under Title VII</u>.

To prove a *prima facie* claim of retaliation the Plaintiff must show: (1) he engaged in protected activity, (2) the Defendant was aware of the protected activity, (3) the

---

[6] The temporary shift change on June 8, 2001 will not be considered by this Court as that action had taken place prior to Plaintiff's involvement in the sexual harassment matter. Although Plaintiff did file a grievance with Water #1 regarding this shift change and it appears that Plaintiff is arguing that such shift change was in retaliation for reporting unsafe working conditions, he did not allege this in the March 20, 2002 EEOC complaint.

[7] Even if this Court were to find that April 25, 2003 EEOC Age Discrimination Complaint encompasses retaliation, which it does not, the only actions that would be exhausted would arguably be the September 11, 2002 position reassignment, October 12, 2002 shift change (both of which were not mentioned in the complaint) and the March 12, 2003 reprimand. However, none of these actions equate to a material adverse employment act (see page 14 of the opinion and order).

Defendant subsequently took an employment action adverse to the Plaintiff, and (4) a casual connection exists between the protected activity and the adverse employment actions. *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). Not every act affecting an individual's employment can be considered an adverse, retaliatory action giving rise to liability. See *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998) (noting need for tangible employment action to support vicarious liability discrimination claim). Instead, to support a Title VII claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Railway Co. v. White*, 126 S. Ct. 2405, 2415 (internal quotation omitted). In determining whether an employee's change is material, we must consider the context of the action. *Id*. Regarding context the Supreme Court stated:

> We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. 'The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.' A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children. A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination (internal cites omitted).

*Id.* at 2415-2416. The burden to establish a prima facie case in a retaliation action is not onerous. *See EEOC v. Avery Dennison Corp*., 104 F.3d 858, 861 (6th Cir. 1997).

Once Plaintiff establishes a prima facie case, a rebuttable presumption of retaliation arises. *See EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) and *Burns v. Jacor Broadcasting Corp.,* 128 F. Supp.2d 497, 514 (6th Cir. 2001). The burden of proof then shifts to the Defendant to articulate a legitimate, non-retaliatory reason for the adverse action. *See Burlington Northern*, 126 S. Ct. 2405, 165 L. Ed. 2d 345; *Brown v. Crowley*, 312 F.3d 782, 805 (6th Cir. 2002). Once that reason is identified, the burden shifts back to the Plaintiff to prove that Defendant's articulated non-retaliatory reason for its action was merely a pretext for unlawful retaliation. *Id*. To show pretext, Plaintiff must prove Defendant's asserted reason had no basis in fact, the reason did not in fact motivate the adverse action, or the reason was insufficient to motivate the adverse action. *Id. Scales v. Metro. Gov't of Nashville*, 2006 U.S. Dist. LEXIS 51282, 24-25 (D. Tenn. 2006).

Breech identifies three protected activities in which he engaged to satisfy the first element in his Memorandum in Opposition to Defendant's Motion for Summary Judgment: (1) his report of sexual harassment towards two female employees and his participation as a witness in their EEOC complaint[8]; (2) his EEOC retaliation complaint of March 20, 2002; and (3) the filing of this lawsuit. Water #1 does not contest this first element.

Second, Breech must show that Water #1 knew he was engaging in protected activity. As noted above, it is undisputed that Breech informed Water #1 of the alleged sexual harassment and that he filed a complaint and a grievance with Water #1 regarding

---

[8] Because Breech reasonably believed that the sexual harassment was unlawful, his reporting the harassment was protected activity despite the fact that the District Court disposed of the sexual harassment suit. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000).

13

what he perceived to be as retaliation for reporting the sexual harassment and for participating as a witness in that matter. Water #1 must have known that Breech was exercising a protected right under Title VII. Therefore, the second element is satisfied.[9]

Breech must next show that Water #1 subsequently took an employment action materially adverse to him, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of harassment. Because of this Courts ruling in Section III(B) above the only actions that can be considered at this point is the shift change effective October 1, 2001 and the reprimand of February 13, 2002. The Court finds that neither action amounts to a material adverse employment action. Breech's title, duties and pay were not effected by either action. *Policastro v. Northwest Airlines, Inc.,* 297 F.3d 535, 539 (2002)(reassignments without changes in salary or benefits do not constitute adverse employment actions sufficient to establish a retaliation claim). Although Breech claims that he was given an increased number of tasks to do on each shift (Breech Decl. ¶20-21), an increase in tasks assigned does not equate to a change in duties. Breech does not allege that the tasks he was given were any different than what he was previously doing, only that he was being asked to do more of them. Attempting to have more productive employees does not amount to a material adverse employment action.

In regards to the context of the situation, Breech is a married man with two adult children. As the Court discussed in *Burlington Northern and Santa Fe Railway Co. v. White*, *supra,* regarding context, a reasonable person in Breech's position in life would not be dissuaded by the shift change. Additionally, a reasonable person would not be

---

[9]Water #1 also does not contest this element.

dissuaded by a reprimand given for not completing an assigned task. Thus, Breech has failed to establish a *prima facie* claim of retaliation. The analysis can and should end here.

    D.    <u>Section 1983</u>

The Sixth Circuit has held that "where the plaintiff asserts that she has been retaliated against for filing a complaint under Title VII, her sole federal remedy is the cause of action provided for under Title VII." *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 794-795 *citing Day v. Wayne County Bd. of Auditors*, 749 F.2d 1199, 1204-05 (6th Cir. 1984) (Congress did not intend for a violation of Title VII to be the basis of a § 1983 claim). Thus, Breech is not entitled to a Section 1983 remedy. Moreover, even if Breech was entitled to such a remedy, the showing a plaintiff must make to recover on an employment discrimination claim under Title VII mirrors that which must be made to recover on an equal protection claim under section 1983. *Morris*, 201 F.3d 784, 794 (6th Cir. 2000) *citing Risinger v. Ohio Bureau of Workers' Compensation*, 883 F.2d 475, 483-84 (6th Cir. 1989). Since Breech has failed to prove a *prima facie* case of retaliation under Title VII, his Section 1983 retaliation claims would also fail.

    E.    <u>Violation of Ohio Public Policy</u>.

Under Ohio law, termination of an at-will employee is wrongful if the termination was against a clear public policy. *Painter v. Graley*, 639 N.E.2d 51, 56 (Ohio 1994). In *Collins v. Rizkana*, the Ohio Supreme Court adopted the following analysis for determining whether the termination was against public policy:

> 1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).
> 4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).

652 N.E.2d 653, 657-58 (Ohio 1995). However, this Court has recognized that Ohio courts have held that "[a] claim for wrongful discharge in violation of public policy embodied in [a] statute prohibiting discriminatory practices will fail if the underlying discrimination claim fails." *Desanzo v. Titanium Metals Corp.*, 351 F. Supp. 2d 769, 782-783 (S.D. Ohio 2005) (holding that because plaintiff's disability discrimination claim failed, his public policy claim failed as a matter of law). *Desanzo* is applicable to Breech's retaliation claim. Since it failed so too must his public policy claim.

Even if *Desanzo* was not applicable, this Court, following the reasoning in *Wiles v. Medina Auto Parts*, 773 N.E.2d 526 (Ohio 2002), held that the relief available under O.R.C. §4112.99 for a statutory claim of retaliation adequately protects society's interest and that the public policy expressed by Ohio Revised Code § 4112.02(I) will not be jeopardized by the lack of a common law tort remedy. *Id.*, at n.11. Thus, Breech is unable to prove the jeopardy element as his relief is provided for by statute in O.R.C. §4112.02(I) and 4122.99.

F. <u>State Breach of Contract</u>

Breech alleges in his complaint that "Defendant has breached the employment agreement existing between Plaintiff and Defendant by terminating Plaintiff without a good faith finding of just cause and without following the procedures set forth in Section VI of Defendant's Summary of Employment Policies." Doc. 4, ¶54). In response, Water #1

16

asserts in its Motion for Summary Judgment that Breech did not have an oral or written employment agreement, that he was an at-will employee, and that he was subject to termination at any time for any non-discriminatory reason (Doc. 16, p29). Furthermore, Water #1 argues that Breech was provided due process in accordance to its Summary of Employment Policies. Breech has present no evidence to the contrary and does not even address this issue in his own Response in Opposition to Defendant's Motion for Summary Judgment (Doc. 23). Therefore, the Court finds that summary judgment is appropriate as to this claim.

    G.    <u>Immunity</u>.

Since this Court has found that Water #1 is entitled to summary judgment as to all counts in the complaint, the Court declines to evaluate this issue.

Based on the foregoing, Defendants' Motion for Summary Judgment (Doc. 16) is hereby **GRANTED** as to all counts.

    **IT IS SO ORDERED.**

                                                  /s/ Michael R. Barrett
                                                Michael R. Barrett, Judge
                                                United States District Court